Good morning, Your Honors. I'd like to reserve three minutes of my time for rebuttal. I have not appeared before any of Your Honors before, so nice to meet you all. Looks like I'll be making up for lost time by returning tomorrow. I guess that gives me twice the incentive not to say anything too dumb today. So I come to this argument with an unusual degree of optimism for an appellant, and that's for three reasons. The first is there was controlling precedent from this circuit, and the government, when they argued against the 2255 motion in the district court, argued precisely what was foreclosed by that binding precedent, which is U.S. v. Rodriguez-Vega. In that case, the court specifically held that a plea agreement and a plea colloquy cannot substitute for deficient advice and is irrelevant to the deficient performance prong of IAC analysis. And the second thing they held was neither could purge prejudice if neither said that deportation is virtually certain. And that's as clear as can be on the face of Rodriguez-Vega. And the government comes in and argues the opposite of both. They argue that it can purge any prejudice even though it doesn't say deportation is virtually certain, and it is relevant to the deficient performance prong. Counsel, let me jump ahead a minute. I do have significant problems with the beginning part of your argument given the record here, but let's skip past that for a minute and let's assume for the sake of argument that we were looking at the four-part test in United States v. Rodriguez. Why don't you explain to me how you would get past part one of the test, how likely the defendant would be to prevail at trial? Well, I argued in my brief that we don't have enough information to definitively answer that question. Okay, well, why don't you give me the best answer you have? The best answer I have is that the standard that applies to that question is very, very lenient for the appellant. The government needs to conclusively rebut the notion that it was rational for the defendant to go to trial. I'm sorry, counsel. Everybody here, you, your friend, the court, we've all been around the block a number of times, and it strikes me that the evidence against your client was extraordinarily overwhelming. The government offered him what looks to be a pretty good plea agreement, including not bringing charges where the evidence was also overwhelming and where your client would have faced significantly more time than he got. And so I have a lot of trouble seeing how in any rational universe, even if your client was not given correct immigration information, that he would have chosen to go to trial on all the charges the government would have brought. Well, all I can really answer, my best answer, is there's a significant number of cases that say it doesn't have to be the wisest choice he makes. It doesn't even have to be the most rational choice. If it's more important for him to avoid a lifetime banishment from the country, then it's a significant factor in the analysis. Had he gone to trial, he would have faced a far more serious sentencing consequence, and he absolutely would have been banned. So the government in its papers represents that they had very strong evidence, and by pleading, he was able to save himself from exposure on two other counts. There was talk about a possible superseding indictment, and ultimately the government also agreed, as I recall, to make a recommendation. So how did he not benefit from the plea? Of course he benefited from the plea bargain. He accepted, but that's certainly not the question. That's always the situation in every one of these cases, Rodriguez-Vega, Bonilla, Padilla. But it's a factor, right? It's one of the factors. So I'm looking at the plea colloquy, not on the immigration, but the page at the bottom right is 130. I'm not sure. I'm sorry if that's the ER page. But the prosecutor, as always, goes through their proffer, and the total weight of drugs attributed to the defendant for the purpose of determining relevant conduct is at least 3,000 but less than 10,000 kilos of converted drug rate. Mr. Rodriguez, is that an accurate description of your conduct? Yes. Do you dispute it in any way? No. And so no matter how lenient the test is, I just can't see any possibility that this defendant, no matter what he had been told about immigration, would have ever gone to trial given what the government was offering. Well, it sounds like the court is making a credibility determination just like the district court did based on this abstract notion of what Your Honors and the district court believe is the most rational course. No, I'm asking you to tell me what reason this defendant, given what he was facing, could have chosen to go to trial. That's something that makes sense in even a somewhat irrational universe. Well, that reason is his greatest desire was to remain in the United States, as everything we know about his background says. And I just would suggest, Your Honors, by concentrating on that point, it seems like it's only one factor and it's misframing the inquiry. Well, let's talk about the other factor when you balance his interests of remaining in the United States against returning to Mexico. Granted, he had his immediate siblings and parents here, but all of his children resided in Mexico. His romantic partner resided there, and he traveled two or three times a year to visit them. So on balance, wouldn't you say that it's a wash? No, I wouldn't say that, Your Honor, because his whole thing was to support his children by working in the United States. I think even the district court mentioned and agreed with the notion that his family was the most important thing to him. And even though the children lived in the United States, he lived in Mexico, he viewed his remaining in the United States as the best way to support them, which he had been doing for the last 20 years. And so I wouldn't say it's a wash. I say that his contacts with this country far outweighed the fact that the children and wife was in Mexico, because that had been the case all along, and all of the rest of his relatives were here. So I see I've overslid that. I know you wanted to save a couple of minutes. I did. Thank you. Could I ask one more question? Oh, of course. I'll give you your time back to answer Judge Bennett's question, please. So if we were to hypothetically – your client is back in Mexico now, right? I've heard that from the government, yes. So if we were to hypothetically grant your client the relief your client seeks, which is setting aside the plea, right, would the government be free at that point to reindict your client for all of the charges that it could have brought had there been no plea agreement? I don't believe there would be any need for a reindictment. That's not my question, though. Would the government, if we granted the relief, which is set aside the plea agreement, would the government have the right to reindict your client and bring all of the charges, including the charges that they chose not to bring the first time? I guess I don't know the answer about the right to reindict, but I would say that if the court did grant that relief, we'd return to square one, and the pending indictment would still be in force, and that's what he would be facing. So he'd be facing the pending indictment, even though he served his time and been deported. He'd be facing the pending indictment with the chance that the government could rebring or could bring the charges in the plea agreement it agreed not to. I think that's accurate. It could supersede. It could always do that, of course, yes. Thank you, counsel.  Good morning, and may it please the Court. Annie Schafer, the United States. This panel is very familiar with the Strickland standard, and the bar is a high one. Mr. Garcia-Rodriguez had to show both deficiency and prejudice to prevail on his claim that his counsel's advice was constitutionally ineffective, and because he failed to do both, this Court should affirm. I want to briefly turn to deficiency first because that seems to be the crux of the appellant's argument, especially in their reply brief. I do want to address the appellant's claim that under Ninth Circuit law, there's really only one way to give effective advice here, which is to use these strict magic words that deportation is a virtual certainty. That is not true. Rodriguez-Vega says that a client should be advised that removal or deportation is a virtual certainty or words to that effect. So the question here really is whether the advice that was given by Mr. Goldrosen reaches words to that effect, falls within that wide range of reasonable professional assistance under Strickland. And here what the attorney advised was that this conviction will absolutely render you deportable. But go ahead. Go ahead. Let me push back on that a little. That certainly is what counsel said. But in, for example, his supplemental declaration, the defendant said, it's not true my lawyer told me my conviction would absolutely render me deportable. He told me instead that he didn't think I would be deported. So certainly, is it Mr. Goldrosen? Is that the name of the defense lawyer?  So it's certainly Mr. Goldrosen said he said what you said. But the defendant said he said something else.  And there was no evidentiary hearing. Yes, Your Honor. The defendant actually said a couple different things because he was given the opportunity. He did his pro se filings and then he filed supplemental declarations. And so what he characterized of what happened actually is a bit inconsistent, I think, in the record itself. And that's something I think the court, the district court took note in making its findings here. But didn't his own attorney state that he could be subject to early release programs? He could be part of a drug treatment program while in supervised release. So he was making arguments during the sentencing phase that sort of belies this notion that he told him you will absolutely be deported. Yes, Your Honor. And I don't know if the record is totally clear about that. But assuming that is true, I don't think that necessarily directly contradicts anything that Mr. Goldrosen said. I think the immigration advice and eligibility for BOP programs like early release are pretty different. You know, as someone who's practiced for a long time, I'm not fully clear on what all the BOP eligible requirements are for early release. And I don't think that actually really came up explicitly during that sentencing hearing. Well, I mean, I think also we've all seen that, I mean, I wasn't on the court in 2015 when the late Judge Reinhart wrote the opinion at issue here. But there certainly are lots of immigration cases where people have been convicted of serious crimes where they're not deported or not departed for a very long time. So, I mean, is it the government's position that just in any case where you've been, it's a serious crime, saying you're absolutely going to be deported is just false, factual information? Well, Your Honor, so I think you raise a very good point. And I think one of the things here is that, first of all, the language from Judge Reinhart in both Bonilla and then Rodriguez-Vega comes from Padilla v. Kentucky. And I think that is the governing Supreme Court case here. If we look at Padilla v. Kentucky, the reason why, first of all, the words virtually certain do not come from Padilla v. Kentucky. Padilla v. Kentucky, the Supreme Court said a client must be advised of their risk of deportation and said that it means that they're subject to mandatory deportation under the law. It was about legal consequences versus practical or prediction of what practical consequences are. And I think what you're pointing out, Judge Bennett, is that when you get to it from conviction all the way to deportation, the actual factor or consequence of deportation, it's not automatic, as you would think. There's actually a process. So this is a perfect case that gives that example, where he pled guilty and he had a conviction that rendered him deportable under the relevant statute. That's what the statute says. It says this conviction will render you deportable. Padilla v. Kentucky have pointed out why this is virtually certain or how the Ninth Circuit interprets it as virtually certain. Because there's no more discretion, really. For previously, there was judicial discretion. That's gone. Congress wrote that out. And there's only very slight, very minimal forms of relief. But still, there's a process. So you're convicted. You still have to be subjected. You're issued an NTA or a notice to appear in immigration court. And then you have immigration proceedings. And then there's an immigration order. So this is a case where that happened here in trying to understand what happened on the immigration side when Mr. Garcia Rodriguez was deported. The government pulled his immigration record, and it shows that when he was released from BOP, he had already been in immigration proceedings via Zoom. I guess BOP has a program where they allow you to appear in immigration court via Zoom. When he was released, I think it was around April or May of 2024, within two months, he, through his attorney, told immigration court, I want to be deported. And so the removal order actually shows that, one, he was not deported based off of this particular conviction. The removal order deported him based off of not having his paperwork when he was last entered the border. And it also showed that he withdrew his pending applications at the time for withdrawal and for asylum, and that he requested the removal order in that case. Now, that's not specifically in the record, but the PSR does show a lot of the reasons for why that would happen, because I think, as both Judge Matsumoto and Judge Bennett have pointed out, his family, his children, were in Mexico this entire time, and he's back there with them right now. And so that is just another factor to consider for the prejudice analysis. I think if there are no further questions from the Court. It doesn't appear that we have any additional questions. Thank you very much, Counsel. Thank you. Let's put two minutes on the clock. I would suggest this is a very simple case. The holding is the attorney has to advise his client in these circumstances that deportation is a virtual certainty. The government submits two declarations from him, and he says everything except that under oath. He lists all these things he said absolutely render him deportable. The attorney personally believed he was going to be deported. He was aware of his professional obligations. He says five or six things just like that without saying he advised his client that his deportation was virtually certain. And now the government is getting up and introducing all this extra record evidence of what happened in immigration court. I have no way of knowing anything about that, so that seems completely improper. Had you been granted a hearing, what evidence would you have provided to the court both on the, you know, deficient performance and prejudice? You mean talking about an evidentiary hearing in the district court? Yes, because I think that's one of your contentions.  The client would have testified, presumably, you know, repeating what he had said in his declarations, and we'd get to cross-examine the attorney, and I assume he would affirm what he said in the declarations. And plus, we'd have an opportunity for, and I mentioned this in the papers, for discovery about the northern district's plea practices. You know, I submitted some examples just to show it's not a completely nonsensical, crazy idea that they would negotiate a different plea conviction that didn't carry the mandatory immigration consequences. And let me just add one point that I didn't stress enough in the papers when I realized when I was preparing for the Sorrell argument, which was the attorney admitted that he gave his client examples of citizens who, of non-citizens who weren't deported despite their convictions for aggravated felonies or something like that. And merely by giving those examples, he's created uncertainty in the defendant's mind where, this is a context where certainty is what's required. And so by undermining that certainty and creating this ambiguity, he didn't, the attorney doesn't even say those are rare cases where they're not deported. He just gave those examples. And with that... All right. Thank you very much, counsel, to both sides for your argument this morning. The matter is submitted.
judges: NGUYEN, BENNETT, Matsumoto